# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYDIA ENGLISH,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | 1:07cv0314 LJO DLB<br><br>FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

**BACKGROUND**

Plaintiff Lydia English ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendation to the District Court.

**FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff filed her applications on September 20, 2004, alleging disability since October 1, 2003, due to carpal tunnel syndrome ("CTS"), tendinitis and arthritis. AR 63-65, 114-119, 265-

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

267. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 31-35, 38-43, 44, 274-278, 281286, 287.  On January 19, 2006, ALJ Laura Havens held a hearing.  AR 292-314.  ALJ Havens issued a decision denying benefits on June 29, 2006.  AR 16-25.  On December 20, 2006, the Appeals Council denied review.  AR 7-10.

Hearing Testimony

ALJ Havens held a hearing on January 19, 2006, in Stockton, California.  Plaintiff appeared with her attorney, Charles Oren.  Vocational expert ("VE") George Meyers also appeared and testified.  AR 292.

Plaintiff was born in 1955.  She is 5'7" tall and weighs 243 pounds.  AR 309.  Although she has a high school diploma, she cannot read the newspaper and can sometimes read street signs.  AR 297.  She can perform simple adding and subtracting.  AR 297.  She was in special education classes in high school and feels that she doesn't know how to read and write.  AR 309.

Plaintiff testified that she became disabled on October 1, 2003, the date her doctor took her off work, but she has worked as an in-home care giver for her mother for the past three years.  AR 297.  She gets paid for 64 hours a month.  AR 298.

Plaintiff stated that she suffers from CTS, tendinitis, arthritis, depression and anxiety.  AR 298.  She wakes up between 9 and 10 in the morning, and her roommate helps her put on her bra and tie her shoes.  AR 299.  She needs help because she can't bend her fingers, feel the thread or put her hands behind her back.  AR 307.  Her roommate also helps her with daily activities.  She does not do household chores, cooks with assistance, and does her own laundry and grocery shopping.  AR 300.  She watches television for about four hours a day.  Plaintiff has a driver's license and can drive for about an hour.  She goes to church and goes to movies with her sister.  AR 301.  She has trouble sleeping and testified that she only gets about four hours of sleep a night.  AR 302.

Plaintiff has been seeing a psychologist once a month, for the past six months.  AR 303.  She sees a medical doctor about once a month.  Her medications sometimes upset her stomach.  AR 304.

Plaintiff believed that she could walk and stand for about an hour at a time, and could sit for about an hour. She could lift ten pounds. Her CTS affects both hands and she has had one surgery on her left hand. The surgery did not help. She cannot pick up anything larger than a small water bottle. She cannot move her fingers to use a keyboard and can sometimes feel hot and cold. AR 305. She can hold an item for about 30 seconds and then has to rest her hands for two to three hours before she can use them again. AR 307.

She also has a constant aching, throbbing pain in both knees. AR 305-306. She rated the pain a six out of ten, with medication. AR 306. Her pain worsens when she walks and they swell all the time. She has to lay down four times a day for at least two hours a time. AR 308.

Her depression and anxiety cause her to be isolated, and she only goes out about once a month. AR 306.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and past work experience. This person could sit for six hours, stand for six hours and walk for six hours. She can lift and carry 25 pounds occasionally, 20 pounds frequently. She can occasionally stoop, bend, kneel, crouch and crawl. She can never reach overhead and can only perform gross handling and fine feeling on a frequent basis with both hands. This person must avoid concentrated exposure to heights and moving machinery. The VE testified that this person could not perform Plaintiff's past work, but could perform the positions of sales counter clerk, survey worker and amusement park worker. AR 311-312.

When questioned by Plaintiff's attorney, the VE indicated that these positions involve at least frequent use of the hands. AR 312.

<u>Medical Evidence</u>

On September 4, 2003, Plaintiff saw Mark A. Moore-Fuller, M.D., for evaluation of tenderness in her wrists with radicular burning sensations down the fingers. She also asked for disability forms to be completed. On examination, there was positive Tinel's sign bilaterally as well as tenderness over the medial left epicondyle, which reproduced a burning sensation in her left hand. Dr. Moore-Fuller diagnosed CTS and left medial epicondylitis. AR 245.

Plaintiff saw nurse practitioner Michael Houser on March 26, 2004, and requested stronger pain medications because she was taking too much Vicodin. She reported that while she was in jail, she did not get any pain medication. She was having trouble sleeping and complained of right knee pain. Her right knee had limited range of motion and was "rather swollen." AR 237.

On March 29, 2004, Plaintiff saw Stephen C. Lee, M.D., for complaints relating to CTS. On examination, there was no atrophy or fasciculations and power and tone were normal. There was subjective dullness to pinprick in the right median distribution with intact sensation over the right last digit. On the left, there was dullness to pinprick in the left middle three digits. Tinel's was slightly positive over both median nerves at the wrist. Phalen's test was positive bilaterally. AR 192.

A nerve conduction study performed on March 29, 2004, suggested a left median neuropathy at the wrist. However, the median motor and sensory distal latencies and amplitudes were within normal limits. AR 190.

On March 30, 2004, Plaintiff saw Mr. Houser and requested stronger pain medications. She ran out of medication early, stating that she did not know how to take them. Her drug abuse panel was positive for marijuana and she was instructed that if she tested positive in 45 days, she could be discharged from the clinic. She was instructed to continue her current medications and was not given a refill. AR 235.

Plaintiff saw Mr. Houser again on April 20, 2004, for knee pain. She could move all extremities well except for her right knee, which had a limited range of motion, although she had a "steady even gait as she walked down the hall." AR 234.

On May 5, 2004, Frank E. Whitney, M.D., performed arthroscopy with debridement and lateral release on Plaintiff's right knee. AR 230-231.

Plaintiff saw Dr. Whitney on June 11, 2004, in follow-up after arthroscopy. She still had some discomfort but felt she was making progress and was doing better than before surgery. She had been going to physical therapy on a regular basis. Her right knee appeared abnormal and she had capsular defect, both of which would be expected for one month post-scope. The crepitus

has decreased. Dr. Whitney directed Plaintiff to continue with physical therapy and gradually increase activities as tolerated. Her disability was extended to November 1, 2004. AR 225.

Plaintiff saw S.K. Madireddi, M.D., for a consultive examination on November 3, 2004. She complained of bilateral CTS, right shoulder pain and right knee pain, all of which started in 2002. On examination, both upper extremities showed mildly positive Tinel's sign bilaterally. There was no muscle atrophy in the hand muscles. She had full range of motion of the upper extremities in all joints except the right shoulder. Motor strength was 5/5 in all upper extremity motor groups and there were no sensory deficits. Fine finger movements and grip strength were both normal. Flexion in the right knee was limited with soft patellofemoral crepitus in its entire range, positive McMurray's test on the medial compartment and a positive Apley's grinding test on the medial compartment. Plaintiff walked with a slight limp favoring her right leg, but did not use an assistive device. She could not heel or toe walk well, and could marginally squat and kneel. AR 193-194.

Dr. Madireddi diagnosed Plaintiff with mild rotator cuff injury with limitation of forward flexion, abduction and impingement, status post DeQuervain's surgery to the left thumb with no residuals, history of bilateral CTS with no objective signs, and status post lateral release surgery to the right knee with slight limitation in flexion. Based on this, Dr. Madireddi opined that Plaintiff may have difficulty using both hands for repetitive tasks, fine and gross manipulative movements. Pushing and pulling were limited to 40 pounds. Plaintiff could lift and carry 20 pounds frequently, 25 pounds infrequently, sit for six hours with breaks at two hour intervals, and stand and walk for a total of six hours, with breaks at two hour intervals. She could occasionally bend, stoop, kneel, crouch, crawl and squat. AR 194-195.

Plaintiff saw Dr. Whitney on September 3, 2004, and her knee seemed "to be doing excellent." Plaintiff was also concerned about her right shoulder. Her examination was consistent with impingement or bursitis. She was given injections as well a prescription for six physical therapy visits. AR 222.

On August 27, 2004, Plaintiff requested stronger pain medication, explaining that Vicodin made her nauseous. Dr. Fuller-Moore explained that a stronger medication would make her nausea worse. AR 223.

On September 21, 2004, Plaintiff saw Dr. Moore-Fuller in follow-up for depression. She requested an increase in her Prozac. Dr. Moore-Fuller increased her Prozac dose to her previous level. AR 220.

On November 24, 2004, Plaintiff saw Marsha McKay, D.O., and requested a change in her pain medications. She reported that Vicodin was no longer working. Plaintiff noted that she was "hoping to be on state disability." On examination, she held her hands gingerly and was reluctant to let the doctor touch them. There were no outward signs of injury and she had good radial pulses. Tinel's sign caused pain almost everywhere in her upper extremity, very nonspecific. She had decreased grip strength, but Dr. McKay opined that there was "poor effort involved, as well." She had limitation of range of motion in flexion and extension in every digit of her hand, but no obvious joint swelling. There was diffuse tenderness over her anterior and lateral shoulder area without localized findings and limited range of motion of the right shoulder. Dr. McKay diagnosed chronic pain/tendinitis/arthritis/bursitis, right upper extremity, depression, insomnia due to pain, as per patient history. Dr. McKay increased her Elavil and hydrocodone, but advised Plaintiff that all of her problems were potentially curable and that she should expect to get off the narcotics at some point with rest, possibly some injections and physical therapy. AR 217.

Plaintiff saw Dr. Moore-Fuller on December 27, 2004. Plaintiff reported that she lost her wrist braces and wanted new ones. She completed physical therapy with some success. On examination, she has positive Tinel's sign bilaterally. Dr. Moore-Fuller diagnosed CTS as well as a lipoma on her lower back near a previous surgical scar. He wrote a prescription for wrist braces. AR 209.

On January 15, 2005, Dr. Madireddi completed a Manipulative Limitations form, opining that Plaintiff could frequently work at or below shoulder level, but never above shoulder level or overhead. She could frequently seize/grasp, hold, flex/extend her wrists, turn and work primarily

6

1  with the whole hand(s).  She could frequently pick, pinch and work primarily with her fingers.
2  She could constantly feel.  AR 197-198.
3        Progress notes from January 17, 2005, indicate that Plaintiff reported a decreased in the
4  effectiveness of her Prozac, as well as a decrease in drive and motivation.  Russell Park, Ph.D.
5  suggested a Effexor trial, in addition to Elavil in the evenings.  AR 210.
6        On January 21, 2005, a State Agency physician completed a Physical Residual Functional
7  Capacity Assessment.  He opined that Plaintiff could occasionally lift/carry 20 pounds
8  occasionally, 10 pounds frequently, could stand and/or walk about six hours and sit for about six
9  hours.  She could frequently climb and balance, and occasionally stoop, kneel, crouch and crawl.
10 Plaintiff could never reach at or above shoulder level with her right arm, but could frequently
11 handle and finger with both hands.  She could constantly reach with her left hand and constantly
12 feel with both hands.  Plaintiff had to avoid concentrated exposure to hazards.  AR 180-186.
13 This opinion was affirmed on May 10, 2005.  AR 186.
14        On January 25, 2005, State Agency physician Archimedes Garcia, M.D., completed a
15 Psychiatric Review Technique form.  He opined that Plaintiff did not have a severe mental
16 impairment.  AR 188.
17       On February 18, 2005, Plaintiff saw Dr. Whitney for repeat evaluation of her right
18 shoulder.  He noted that overall, she was "doing reasonably well in that there is significantly less
19 pain than there has been in the past."  AR 205.  Plaintiff also had pain in her left shoulder, but
20 attributed it to an "altercation with the local correctional officers."  AR 205.
21      Plaintiff underwent a nerve conduction study on July 18, 2005.  The findings were
22 compatible with a mild left median neuropathy at the wrist.  AR 247.
23       On March 4, 2006, Plaintiff saw Erik Roberson, M.D., for an orthopedic evaluation.  She
24 complained of bilateral wrist and knee pain.  On examination, Plaintiff was obese and was able to
25 walk to the examination room and sit comfortably throughout the interview.  She was clumsy in
26 removing her shoes and socks.  Plaintiff's basic gait was normal, toe and heel walking were
27 intact bilaterally, and she was able to hop on the right foot, but not the left.  She was unable to
28 squat and return to a standing position.  Tinel's sign was positive bilaterally.  Bulk and tone were

normal in all extremities.  Fine dexterous movements of the hands were normal bilaterally.  There was tingling sensation to light touch in the left C6 distribution and sensation was reduced on the left.  Dr. Roberson diagnosed bilateral CTS, bilateral shoulder diminished range of motion, left greater than right, and knee pain due to baker cyst.  He opined that Plaintiff could sit for six hours, stand for six hours, lift 10 pounds frequently, 20 pounds occasionally, and frequently crouch, kneel or crawl.  She was limited in her ability to reach above her head and should not engage in repetitive motor movements involving the wrists.  AR 254-258.

On March 5, 2006, Plaintiff saw Lara Allen, Ph.D., for a psychological evaluation.  Plaintiff complained of depression and a memory impairment, and reported a suicide attempt in February 2000.  She was incarcerated from September 2002 until March 2003 for writing bad checks.  Plaintiff reported that she occasionally smoked marijuana to relieve her pain, but has stopped smoking and drinking on the advice of her attorney.  On mental status examination, Plaintiff was oriented to person, place, time and purpose.  She was "significantly obese to the point that she must have difficulty standing for any length of time," but she did not appear to be in pain during the interview.  Her thought processes were linear and goal-directed and her attention/concentration appeared average.  Both insight and judgment were poor, however, and Plaintiff tended to blame others for her problems.  AR 259-263.

Dr. Allen diagnosed adjustment disorder with depressed mood and borderline intellectual functioning.  She also noted Plaintiff's problems with her health, housing, finances and a primary support system.  Her depression appeared to be a combination of reactive depression secondary to her current physical problems and depression secondary to the pain medication use (and possibly cannabis and alcohol use).  Testing revealed that she had difficulty with her working memory, as well as short-term and long-term memory.  If she obtained employment, Dr. Allen thought it likely that her supervisor would "become impatient with her memory lapses."  AR 263-264.  Plaintiff retained the good perceptual organization that has enabled her to work for so many years, and Dr. Allen believed that her main problems were physical.  Her depression and memory were "side issues" that would likely resolve substantially when she is no longer in pain and taking pain medication.  AR 264.

1    Dr. Allen also completed a Physical Medical Source Statement and opined that Plaintiff
2 could perform less-than-sedentary work.  However, she noted that her opinion was based on
3 Plaintiff's self-report and that assessment of physical limitations was beyond the scope of her
4 psychological evaluation.  AR 250-253.
5    *Evidence Submitted with Opening Brief*
6    Plaintiff submits a Questionnaire completed by Edgar O. Vyhmeister, M.D., along with
7 treatment notes and an operative report.  Plaintiff underwent arthroscopy of her left knee on April
8 26, 2006, for a left knee medial meniscus tear and chondromalacia.
9    She returned for a follow up visit on October 6, 2006.  Plaintiff reported that she was still
10 having a lot of pain in her knee, although she was "getting along reasonably well overall."  On
11 examination, she had some soreness in both wrists.  Her right shoulder was doing a lot better and
12 feeling "pretty good" after an injection in June.  Dr. Vyhmeister suggested that she be fitted for a
13 knee brace for her left knee, which would help "her some."  She was also fitted with a left and
14 right wrist splint.  If she continued having trouble, Dr. Vyhmeister suggested she consider carpal
15 tunnel release.
16    Dr. Vyhmeister's Questionnaire is not dated.  He opines that Plaintiff cannot work at any
17 exertional level because of pain in her left knee and ongoing effusion.  She could sit for two
18 hours at one time and stand/walk for 30 minutes.  He also indicated that Plaintiff could sit for
19 two hours total and stand/walk for 30 minutes total.  Plaintiff would need to elevate her legs for
20 30 minutes at a time, every two hours.  He believed that these limitations have been present since
21 April 26, 2006.
22    ALJ's Findings
23    The ALJ found that Plaintiff had the severe impairments of CTS, shoulder disorder, knee
24 disorder and depression.  AR 20.  Despite these impairments, the ALJ determined that Plaintiff
25 retained the residual functional capacity ("RFC") to sit for six hours, stand and/or walk for six
26 hours, lift and/or carry 20 pounds occasionally, 10 pounds frequently, and occasionally kneel,
27 crouch and crawl.  Plaintiff could perform bilateral gross and fine manipulative movements
28 frequently, but never overhead reaching.  She had to avoid concentrated exposure to heights and

moving machinery, and could only perform simple, repetitive tasks. AR 20-21. Given this RFC, the ALJ found that Plaintiff could not perform her past relevant work, but could perform jobs that exist in significant numbers in the national economy. AR 23.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

1  The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th
2  Cir. 1990).
3        In an effort to achieve uniformity of decisions, the Commissioner has promulgated
4  regulations which contain, inter alia, a five-step sequential disability evaluation process. 20
5  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Here, the ALJ determined that Plaintiff (1)
6  had not engaged in substantial gainful activity since the alleged onset of disability;(2) has an
7  impairment or a combination of impairments that is considered "severe" (CTS, shoulder disorder,
8  knee disorder and depression) based on the requirements in the Regulations (20 CFR §§
9  416.920(b)); (3) does not have an impairment or combination of impairments which meets or
10 equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot
11 perform her past relevant work; but (5) retains the RFC to perform a significant number of jobs
12 in the national economy.  AR 19-23.
13       Here, Plaintiff argues (1) that the ALJ's RFC finding was unsupported;(2) that the ALJ
14 incorrectly assessed the credibility of Plaintiff and the third party; and (3) that the ALJ did not
15 properly develop the mental health record.

16                         **DISCUSSION**

17 A.    RFC Finding
18       Plaintiff argues that although "there are some isolated opinions which support the RFC
19 partly," the ALJ's finding that Plaintiff could perform light work was contrary to the evidence.
20 She focuses on the ALJ's finding that she could stand for six hours and perform repeated
21 movements with her hands.
22       RFC is an assessment of an individual's ability to do sustained work-related physical and
23 mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a
24 week, or equivalent work schedule.  SSR 96-8p.  The RFC assessment must be based on all of
25 the relevant evidence in the record, including the effects of symptoms that are reasonably
26 attributed to a medically determinable impairment.  SSR 96-8p.  In addition, the adjudicator
27 "must consider limitations and restrictions imposed by all of an individual's impairments, even
28 those that are not 'severe,'" because such limitations may be outcome determinative when

considered in conjunction with limitations or restrictions resulting from other impairments.  SSR 96-8p.

Here, the ALJ found that Plaintiff could sit for six hours, stand and/or walk for six hours,[2] lift and/or carry 20 pounds occasionally, 10 pounds frequently, and occasionally kneel, crouch and crawl.  Plaintiff could perform bilateral gross and fine manipulative movements frequently, but never overhead reaching.  She had to avoid concentrated exposure to heights and moving machinery, and could only perform simple, repetitive tasks.  AR 20-21.  In so finding, she adopted the opinions of consultive examiners Dr. Madireddi and Dr. Roberson, and the opinion of the State Agency physician.

In the November 2004, assessment, Dr. Madireddi opined that Plaintiff "may have difficulty using both hands for repetitive tasks, fine and gross manipulative movements."  AR 194.  She could lift and carry 20 pounds frequently, 25 pounds infrequently, sit for six hours with breaks at two hour intervals, and stand and walk for a total of six hours, with breaks at two hour intervals.  She could occasionally bend, stoop, kneel, crouch, crawl and squat.  AR 194-195.  In January 2005, Dr. Madireddi concluded that Plaintiff could "frequently" use her hands to seize, grasp, hold, pick, pinch and work with her fingers.  AR 197.  The RFC finding is consistent with Dr. Madireddi's opinion.  An ALJ may rely on opinions of consultive examiners when they are supported by independent clinical findings.  *Orn v. Astrue*, 495 F.3d 625, 632-633 (9th Cir. 2007).

Although Plaintiff characterizes Dr. Madireddi's findings as "too inconsistent to be relied on," a review of the treatment notes shows otherwise.  In the November 2004, report, Dr. Madireddi noted that Plaintiff "may have difficulty using both hands for repetitive tasks, fine and gross manipulative movements, particularly because of the DeQuervain's syndrome of the left thumb and because of some symptoms of CTS bilaterally."  AR 194.  He did not, however, assess any definitive limitations.  In January 2005, he completed a Manipulative Limitations Questionnaire and opined that Plaintiff could frequently perform manipulative movements,

---

[2] Plaintiff repeatedly states that the ALJ found that she could stand "all day."  However, the ALJ found her capable of standing and/or walking for six hours out of an eight hour day.

12

1  except for working above shoulder level, which she could never do.  AR 197-198.  Rather than
2  being inconsistent, it appears that his January 2005 assessment is an explanation of his
3  November 2004, examination and opinion.  His examination showed mildly positive Tinel's sign
4  bilaterally, but no muscle atrophy in the hand muscles, no sensory deficits, full range of motion
5  in all upper extremities except the right shoulder, motor strength of 5/5 in all upper extremity
6  motor groups, and normal fine finger movements and grip strength.  AR 193-194.  Indeed, Dr.
7  McKay saw Plaintiff shortly after her examination with Dr. Madireddi and noted that she had no
8  weakness in either hand and although she had decreased grip strength, Dr. McKay thought that
9  poor effort was involved.  He also noted that her problems were "potentially curable."  AR 217.
10 The courts do not have the responsibility for weighing the evidence and resolving conflicts
11 therein, that responsibility belongs to the Commissioner alone.  *Richardson v. Perales*, 402 U.S.
12 389, 399 (1971).  In any event, the Court must uphold the ALJ's decision where the evidence is
13 susceptible to more than one rational interpretation.  *Magallanes v. Bowen*, 881 F.2d 747, 750
14 (9th Cir. 1989).
15        During Dr. Roberson's March 2006, examination, he found positive Tinel's sign
16 bilaterally, normal bulk and tone in all extremities, normal fine dexterous movements of the
17 hands bilaterally, and reduced sensation on the left.  He opined that Plaintiff could sit for six
18 hours, stand for six hours, lift 10 pounds frequently, 20 pounds occasionally, and frequently
19 crouch, kneel or crawl.  She was limited in her ability to reach above her head and should not
20 engage in repetitive motor movements involving the wrists.  AR 254-258.  This opinion, too, is
21 consistent with the ALJ's finding that Plaintiff could perform bilateral gross and fine
22 manipulative movements frequently, but never overhead reaching.  Plaintiff correctly
23 characterizes Dr. Roberson's opinion as restricting repetitive use of the hands.  However, the
24 ALJ's finding that Plaintiff could perform *frequent* gross and fine manipulative movements is not
25 precluded by a restriction against *repetitive* use of the hands.
26        The ALJ's RFC finding is further supported by the State Agency physician, who found
27 that Plaintiff could occasionally lift/carry 20 pounds occasionally, 10 pounds frequently, stand
28 and/or walk about six hours and sit for about six hours.  She could frequently climb and balance,

and occasionally stoop, kneel, crouch and crawl. She could never reach at or above shoulder level with her right arm, but could frequently handle and finger with both hands. She could constantly reach with her left hand and constantly feel with both hands. AR 180-186. In assessing a claimant's RFC, the ALJ may rely upon the state agency physician's findings as to claimant's ability. 20 C.F.R. §§ 404.1513(c), 404.1527(f)(2)(I), 416.913(c), 416.927(f)(2)(I).

Plaintiff's argument is based mainly on the existence of her impairments, rather than any resulting limitations. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability). For example, she points to her obesity and knee surgeries and concludes that the ALJ's finding that she can perform light work is "illogical and contrary to the evidence." Opening Brief, at 5. However, despite her obesity and knee surgery, both consultive and reviewing physicians opined that she was capable of performing light work, with restrictions.

Plaintiff also states that "two treating source opinions, including the attached from the orthopedic surgeon," confirm that she cannot do full time work. Opening Brief, at 5. Dr. Vyhmeister's extreme opinion is not material[3] as it only related to the time period after April 26, 2006, two months before the ALJ issued her decision and more than two and one half years after Plaintiff alleged she became disabled. 2 U.S.C. § 1382c(a)(3)(A) (claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically-determinable physical or mental impairment which has lasted, or which can be expected to last, for a continuous period of not less than twelve months).

Plaintiff does not identify the other treating source, although there is a Questionnaire in the record from R.I. Reina, M.D., dated October 19, 2006, almost four months after the ALJ issued her decision. AR 290-291. Dr. Reina opines that Plaintiff cannot perform work at any

---

[3] Pursuant to the provisions of 42 U.S.C. § 405 (g), as amended in 1980, a case may be remanded to the Secretary if the new evidence submitted is material, and there is good cause for the failure to incorporate it into the record. In order to be "material," the new evidence must be probative of the claimant's condition as it existed during the relevant time period -- on or before the administrative hearing. *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 511 (9th Cir. 1987). In addition, the claimant must prove to the reviewing court's satisfaction that there exists a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him." *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984).

exertional level due to her CTS, knee pain, tendinitis and chronic pain. As objective support, Dr. Reina lists "surgical report, drugs and exams." AR 290. There are no treatment notes from Dr. Reina in the record. The Appeals Council considered this report but declined Plaintiff's request for review. AR 7-10. Plaintiff does not explain why she believes the Appeals Council's decision was incorrect. In any event, Dr. Reina's opinion is both unsupported and questionable, at best. See *Clem v. Sullivan*, 894 F.2d 328, 332-333 (9th Cir. 1990) (questioning intentions of claimant who seeks out a more favorable opinion after denial).

Plaintiff's claim is without merit and should be denied. Plaintiff will not prevail simply because there may be evidence supporting her position. *Richardson v. Perales*, 402 U.S. at 399; *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

B.     Credibility Analysis

Next, Plaintiff argues, without explanation, that the ALJ "unfairly reported and assessed" her credibility and that of her friend, Tracey Biehle. She cites SSR 96-7p and simply states that the ALJ failed to give adequate reasons for rejecting credibility "under any of the eight criteria." Opening Brief, at 7.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect

of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

First, Plaintiff incorrectly argues that SSR 96-7p sets forth a mandatory procedure through which an ALJ must assess the claimant's credibility. While courts give the SSRs some deference, they do not have the force of law. *Holohan v. Massanari,* 246 F.3d 1195, 1203, n. 1 (9th Cir. 2001).

Second, the ALJ set forth sufficiently specific reasons to allow the Court to conclude that she did not arbitrarily discredit Plaintiff's testimony. She began by explaining that Plaintiff's daily activities were not limited "to the extent one would expect, given the complaints of disabling pain and symptoms." AR 21. For example, in her Daily Activities Questionnaire, Plaintiff stated that she prepares meals three to four times daily, does "light cleaning" and laundry, and irons. AR 21, 143-150. Another time, Plaintiff reported that she was able to run errands, drive and manage money. AR 21, 171. Similarly, the ALJ noted that in the Third Party Activity Report, Ms. Biehle indicated that Plaintiff could prepare her own meals, perform light cleaning, drive and shop. AR 21, 151-159. She also indicated that Plaintiff could follow simple tasks, such as following written instructions. AR 21, 156.

The ALJ next examined the medical record and concluded that it was not necessarily consistent with Plaintiff's allegations. AR 21. For instance, Plaintiff's nerve conduction study found only mild left median neuropathy at the wrist, and although testing showed signs of CTS, a treatment note indicated that Plaintiff's treating physician believed that her CTS was "not bad enough to be worked on." AR 21, 233. As to her allegations relating to her knee, the ALJ explained that her doctor noted that her knee was "doing excellent" after the surgery, and even before the surgery, Plaintiff had a steady, even gait. AR 21, 222, 234. X-rays of her right knee showed only mild early degenerative chances. AR 229. Moreover, despite her allegations of disabling shoulder pain, Dr. Whitney noted that she was doing "reasonably well" with "significantly less pain." AR 21, 205.

Finally, the ALJ noted several instances in the record where Plaintiff's credibility was called into question and she exhibited "drug seeking behavior." AR 21, 223, 233, 235, 236, 243, 263. The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

Plaintiff's claim is without merit and must be denied.

C.  Mental Health Record

In her final argument, Plaintiff contends that the ALJ should have developed the mental health record as to Plaintiff's "current mental health limits from the 'moderate' depression and low IQ." Opening Brief, at 7.

In general, it is the duty of the claimant to prove to the ALJ that she is disabled. 20 C.F.R. § 404.1512(a). To this end, she must bring to the ALJ's attention everything that supports a disability determination, including medical or other evidence relating to the alleged impairment and its effect on her ability to work. *Id.* For his part, the ALJ has the responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d). When the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence, the ALJ has a duty to develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001).

Plaintiff argues that the ALJ should have requested clarification from Dr. Allen because her conclusions were unclear as to her mental limitations. Dr. Allen found that Plaintiff's depression appeared be caused by both her current physical problems and pain medication use. If she obtained employment, Dr. Allen thought it likely that her supervisor would "become impatient with her memory lapses." AR 263-264. Despite this, Plaintiff retained the good perceptual organization that has enabled her to work for so many years, and Dr. Allen believed that her main problems were physical. Her depression and memory were "side issues" that would likely resolve substantially when she is no longer in pain and taking pain medication. AR 264.

1   The ALJ reviewed Dr. Allen's finding and gave them "great weight" because it was well
2  supported by medically acceptable diagnostic techniques and consistent with the treatment
3  records. AR 23. Based on Dr. Allen's opinion that Plaintiff may have trouble with her memory,
4  the ALJ limited Plaintiff to simple, repetitive tasks. AR 23.

5   Contrary to Plaintiff's suggestion, Dr. Allen's report was not unclear or otherwise
6  inadequate so as to trigger the ALJ's duty to develop the record. Instead, she concluded that
7  Plaintiff's physical problems contributed heavily to her depression and that the only resulting
8  limitation was a memory impairment, which the ALJ took into account. Dr. Allen's opinion and
9  the ALJ's limitation is further supported by the State Agency physician's finding that Plaintiff
10 did not have a severe mental impairment. AR 188.

11  Plaintiff's argument is without merit and should be denied.

## **RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Lydia English.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 16, 2008**          /s/ **Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE